STATE OF NORTH CAROLINA v. DANIEL LEE KING

No. COA09-1659

(Filed 17 August 2010)

**Search and Seizure— pat-down—defendant's cooperative behavior**

A frisk of defendant that revealed methamphetamine, and subsequently cocaine and paraphernalia, was constitutional where defendant and his passenger looked at an officer in an odd manner as the officer passed their car, the officer stopped the car and defendant placed his hands outside his window as the officer

approached his car, defendant told the officer that there was a gun on the dashboard, and defendant removed his coat before leaving the vehicle despite chilly weather. Despite defendant's argument that his cooperative conduct exhibited nothing dangerous, the totality of the circumstances from the perspective of a law enforcement officer supported the conclusion that this officer had reasonable grounds to believe that his safety was in danger.

Appeal by Defendant from judgments entered 5 August 2009 by Judge Richard L. Doughton in Buncombe County Superior Court. Heard in the Court of Appeals 27 May 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for Defendant.*

BEASLEY, Judge.

Daniel Lee King (Defendant) appeals pursuant to N.C. Gen. Stat. § 15A-979(b) from an order denying his motion to suppress any and all evidence obtained as a result of the traffic stop that preceded his arrest. For the reasons stated below, we affirm.

On 14 November 2008, Defendant was arrested for various offenses arising out of a traffic stop which was initiated by Officer James Wade Cecil of the Asheville Police Department. On 5 January 2009, Defendant was indicted for carrying a concealed weapon, displaying a fictitious tag, possession of drug paraphernalia, along with the aggravated felonies of maintaining a vehicle for keeping and selling a controlled substance and possession with intent to sell or deliver methamphetamine, marijuana, oxycodone, and cocaine. Defendant moved to suppress the evidence underlying the charges filed against him, and his motion came on for pretrial hearing on 5 August 2009.

Officer Cecil testified for the State at the suppression hearing. Cecil's recitation of the facts indicates that while conducting routine patrol around midnight on 14 November 2008, he observed Defendant driving a gold Chrysler·Sebring. Cecil noticed that Defendant and his passenger were looking at the officer oddly and continued to look at him as they passed. Cecil entered the Sebring's plate information in

STATE v. KING

[206 N.C. App. 585 (2010)]

his computer to compare the tag with the DMV records, which revealed that the tag was registered to a two-door Nissan, not a Sebring. Cecil initiated a traffic stop. He noticed the driver holding both of his hands out of the window as he approached the vehicle, and without any question or inquiry, Defendant immediately told Cecil that he had a gun sitting on the dashboard. The small caliber handgun was retrieved by Cecil and disarmed by another officer who had arrived for assistance. Cecil then asked Defendant to exit the vehicle. Defendant complied but first removed the large, puffy coat he was wearing and left it inside the car. This raised the officer's suspicions because that particular day was "quite chilly." Leaving the passenger in the vehicle, Cecil led Defendant twenty-five to thirty feet back to his patrol car and conducted a pat-down search for safety purposes. The officer felt what he immediately recognized as a pill bottle in Defendant's pants pocket and asked him what it was. Defendant answered that it was "meth." Cecil then retrieved the bottle and, observing a substance therein that appeared to be crystal methamphetamine, they performed a full search of Defendant's person. The officer located a small plastic bag containing what he believed to be cocaine. Defendant was arrested for possession of methamphetamine and cocaine, handcuffed, and placed in the back of Cecil's patrol car. At that time, Cecil and other officers searched Defendant's vehicle, including his coat and a bag lying in the rear passenger area, and discovered more narcotics, drug paraphernalia, and another weapon.

The trial court issued oral findings consistent with the above-articulated facts and conclusions of law that the stop of the vehicle was based on reasonable suspicion and therefore lawful; the pat-down search of Defendant was lawful as a proper Terry frisk; and that the vehicle search was proper under *Arizona v. Gant*, 566 U.S. ——, 173 L. Ed. 2d 485 (2009), because it was reasonable for the officer to believe Defendant's car contained evidence of the offense of arrest. Further concluding that none of Defendant's Fourth Amendment rights had been violated, the trial court denied the suppression motion. Defendant then pled guilty to the offenses as charged but reserved his right to appeal the court's ruling on his motion to suppress the evidence. Defendant now appeals.

In addressing the denial of Defendant's suppression motion, we must limit our review to a determination of whether the trial court's findings of fact are supported by competent evidence and whether those findings support its conclusions of law. *State v. Cooke*, 306 N.C.

132, 134, 291 S.E.2d 618, 619 (1982). Here, Defendant poses no challenge to the trial court's findings of fact, which are therefore "deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson,* 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004). Accordingly, our review is confined to the correctness of the trial court's ultimate legal conclusions, a question of law which is fully reviewable *de novo. State v. Campbell,* 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005).

Although Defendant assigned error to the conclusion that the initial seizure of his vehicle was lawful, he does not address the constitutionality of the stop in his brief and accordingly abandons this argument. *See* N.C.R. App. P. 28(a) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned."). Rather, his sole challenge is that the pat-down search, or "weapons frisk" by Cecil was not supported by a reasonable suspicion that Defendant was presently armed and dangerous, such that the evidence discovered during the subsequent search of Defendant's person and vehicle constituted fruits of the poisonous tree and should have been suppressed as such. We disagree.

While warrantless searches are generally per se unreasonable under the Fourth Amendment, the United States Supreme Court recognized a limited exception in *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889 (1968). *See* U.S. Const. amend. IV (protecting "[t]he right of the people to be secure in their persons . . . against unreasonable searches"); *State v. Watkins,* 337 N.C. 437, 441, 446 S.E.2d 67, 69 (1994) ("[The Fourth Amendment] is applicable to the states through the Due Process Clause of the Fourteenth Amendment."). It is now well established that during a lawful stop, "an officer may conduct a pat down search, for the purpose of determining whether the person is carrying a weapon, when the officer is justified in believing that the individual is armed and presently dangerous." *State v. Sanders,* 112 N.C. App. 477, 480, 435 S.E.2d 842, 844 (1993) (citing *Terry,* 392 U.S. at 24, 20 L. Ed. 2d at 908). Thus, this Court has held:

> Although a routine traffic stop does not justify a protective search for weapons in every instance, once the defendant is outside the automobile, an officer is permitted to conduct a limited pat down search for weapons if he has a reasonable suspicion based on articulable facts under the circumstances that defendant may be armed and dangerous.

*State v. Briggs*, 140 N.C. App. 484, 488, 536 S.E.2d 858, 860 (2000). In determining the reasonableness of a weapons frisk, we are guided by the *Terry* standard, adopted by our Supreme Court in *State v. Peck*, 305 N.C. 734, 291 S.E.2d 637 (1982), and must resolve " 'whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Sanders*, 112 N.C. App. at 481, 435 S.E.2d at 844-45 (quoting *Peck*, 305 N.C. at 742, 291 S.E.2d at 642). Accordingly, "[t]he officer need not be absolutely certain that the individual is armed[.]" *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909. Rather, the officer is "entitled to formulate 'common-sense conclusions' about 'the modes or patterns of operation of certain kinds of lawbreakers' " in reasoning that an individual may be armed. *State v. Butler*, 331 N.C. 227, 234, 415 S.E.2d 719, 723 (1992) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629 (1981)). Ultimately, the determination of whether an officer was justified in conducting a pat-down frisk as a matter of self-protection hinges on the totality of the circumstances. *See id.* at 233, 415 S.E.2d at 722.

Here, Cecil approached Defendant's vehicle following a lawful traffic stop and initially became "kind of on guard" when he observed the driver, subsequently identified as Defendant, holding both of his hands out of the window. Unprompted by the officer, Defendant immediately notified Cecil that he had a gun sitting on the dashboard of the car. Cecil testified that the gun, thereafter determined to be a loaded .25-caliber handgun, raised his concerns "for officer's safety purposes." The fact that Defendant removed his coat before exiting the vehicle further aroused Cecil's suspicions, leading the trial court to find "that with the knowledge of the gun in the car and with the suspicious nature of taking the coat off, the officer told the defendant he was going to pat him down for officer's safety and proceeded to do a Terry pat-down." However, Defendant argues that it is these precise facts which rendered unreasonable Cecil's suspicion that Defendant was presently armed and dangerous because his actions demonstrate that "[h]e immediately took steps to show the officer that he did not want to pose any threat." Defendant maintains that his cooperative conduct exhibited nothing dangerous or potentially so and that the pat-down search was accordingly unwarranted. Attempting to minimize the impact that the loaded handgun could have had on a prudent officer's safety concerns, Defendant suggests that the discovery of an admittedly unconcealed weapon—which was then located and retrieved by law enforcement—could not support a reasonable

suspicion that he may still be presently armed and dangerous, i.e. that Defendant may have been in possession of another weapon. To the contrary, Cecil testified that he has been trained to treat situations in which there is one weapon with the awareness "that there could possibly be other weapons."[1] Moreover, Defendant cites no authority in support of the proposition that the discovery of one weapon would not justify a reasonable suspicion that a suspect may remain dangerous.

While it does not appear that our courts have addressed this exact argument, the United States Supreme Court and other jurisdictions have found the confirmed presence of a weapon to be a compelling factor. *See Michigan v. Long*, 463 U.S. 1032, 1050-51 & n.15, 77 L. Ed. 2d 1201, 1220-21 & n.15 (1983) (concluding a car frisk was supported by reasonable suspicion because one weapon had already been found and, noting the same analysis would apply to justify the frisk of the defendant's person conducted only after the knife was discovered, "the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within [his] immediate grasp"); *United States v. Vinton*, 594 F.3d 14, 20 (D.C. Cir. 2010) (stating " '[t]he presence of one weapon may justifiably arouse concern that there may be more in the vicinity' " and thus concluding that "[a]lthough [the officer] removed this knife and placed it out of arm's reach on the roof of [the defendant's] car, he was justifiably concerned that additional weapons might be hidden elsewhere in the vicinity").

We agree that an already discovered weapon is a crucial factor supporting reasonable suspicion to conduct a *Terry* frisk, even where that weapon is secured and out of the defendant's reach. Moreover, Cecil was entitled to formulate "common-sense conclusions," based upon an observed pattern that one weapon often signals the presence other weapons, in believing that Defendant, who had already called the officer's attention to one readily visible weapon, might be armed. The combination of this loaded handgun, the late hour, the odd manner by which Defendant and his passenger continued to look at Cecil as they passed the officer, and the unusual gesture of Defendant placing his hands out of his window, gave rise to far more than a hunch that Defendant might have been armed. *Cf. State v. Young*, 148 N.C. App. 462, 468, 559 S.E.2d 814, 819 (2002) (considering the officer's testimony that "defendant's unusual behavior caused him to 'heighten

---

1. In fact, another weapon—a throwing knife—was indeed discovered on the floorboard in the rear of the vehicle.

[his] sense of safety' "). The totality of the circumstances "viewed from the common-sense perspective of a law enforcement officer," supports the conclusion that Cecil had reasonable grounds to believe that his safety was in danger, "even in the face of an otherwise cooperative defendant." *State v. McRae*, 154 N.C. App. 624, 630, 573 S.E.2d 214, 219 (2002). As such, we hold that the specific, articulable facts, as found by the trial court, are sufficient to support Cecil's reasonable suspicion that Defendant was armed and presently dangerous after exiting his vehicle and the conclusion that the pat-down frisk was constitutional.

Defendant contends that the bottle containing methamphetamine and the evidence uncovered in the resulting vehicle search should be suppressed, but he premises this challenge solely on the notion that the pat-down search of his person was unreasonable. Our conclusion that the frisk of Defendant was lawful disposes of this argument because the fruits therefrom were not poisoned by any constitutional violation under *Terry* and its progeny. Defendant does not address the trial court's conclusion that the vehicle search for evidence of the offense of arrest was proper under *Gant*, 566 U.S. ——, 173 L. Ed. 2d 485, and, therefore, we do not revisit that issue on appeal.

Accordingly, we affirm the trial court's denial of Defendant's motion to suppress.

Affirmed.

Judges GEER and JACKSON concur.