IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-96

 Filed: 17 December 2019

Mecklenburg County, 17CRS201621-22

STATE OF NORTH CAROLINA

 v.

BRYAN XAVIER JOHNSON, Defendant.

 Appeal by Defendant from Judgment entered 26 June 2018 by Judge Forrest

D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 4

September 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Douglas
 W. Corkhill, for the State.

 Kimberly P. Hoppin for Defendant-Appellant.

 INMAN, Judge.

 Bryan Xavier Johnson (“Defendant”) appeals his convictions following guilty

pleas to felony cocaine possession and misdemeanor possession of drug

paraphernalia. Defendant argues the trial court erred in denying a motion to

suppress evidence supporting these convictions because the police officer who

searched Defendant’s vehicle (1) lacked reasonable suspicion to conduct the search

and (2) unlawfully extended the duration of the traffic stop. After thorough review of

the record and applicable law, we hold that Defendant has failed to demonstrate

error.
 STATE V. JOHNSON

 Opinion of the Court

 I. FACTUAL AND PROCEDURAL BACKGROUND

 The record and the evidence introduced at the suppression hearing tend to

show the following:

 At about 12:45 am on 14 January 2017, Officer Elliot Whitley (“Officer

Whitley”) and Sergeant Visiano of the Charlotte-Mecklenburg Police Department

were traveling on Central Avenue in Charlotte in a single patrol car. Officer Whitley

described the location as a high-crime area, where he has been involved in numerous

drug and firearm cases.

 During their patrol, Officer Whitley observed Defendant’s black Dodge

Charger. Sergeant Visiano ran a computer database search of the license plate

number and discovered that it was registered to a different vehicle. Officer Whitley

then initiated a traffic stop of Defendant’s vehicle. Defendant stopped “fairly

immediately.”

 As Officer Whitley approached the driver’s side of Defendant’s vehicle, he

noticed Defendant raising his hands in the air and holding them outside the window

of the vehicle. Based on his seven years of experience, including almost five years

with particular involvement in drug crimes, Officer Whitley took notice that

Defendant was raising his hands because “sometimes it can mean [that the person

has] a gun.”

 -2-
 STATE V. JOHNSON

 Opinion of the Court

 Officer Whitley asked Defendant for his license and registration and stated

that he stopped him because his vehicle tag was registered to an Acura MDX. Officer

Whitley also asked Defendant if he had a firearm; Defendant responded that he did

not. As Defendant was looking for his license and the vehicle registration, he

explained to Officer Whitley that he had just purchased the vehicle that day.

Defendant handed Officer Whitley his license out of his wallet and then searched in

the center console to retrieve the registration and the bill of sale. As Defendant was

searching in the console, Officer Whitley noticed him “blading his body,” as if he were

“trying to conceal something that [was] to his right.” Although Defendant was

cooperative throughout this process, he appeared “very nervous . . . like his heart

[was] beating out of his chest a little bit.” Defendant eventually provided the

paperwork, including an apparent bill of sale. Officer Whitley returned to the patrol

car to run Defendant’s information through law enforcement databases. Defendant

remained in his vehicle and Sergeant Visiano stood near the right passenger door

during this time.

 While reviewing Defendant’s information on law enforcement databases,

Officer Whitley learned that from 2003 to 2009, Defendant was charged with violent

crimes of robbery with a dangerous weapon, conspiracy to commit robbery with a

dangerous weapon, assault with a deadly weapon with the intent to kill, and

discharging a weapon into occupied property. Officer Whitley testified that, of

 -3-
 STATE V. JOHNSON

 Opinion of the Court

Defendant’s criminal history, he recalled that there were two convictions, the most

recent occurring in 2009. Considering the totality of the circumstances, including

Defendant’s placement of his hands, blading of his body, nervous behavior, and

criminal history, Officer Whitley believed that Defendant “was armed and dangerous

at that point.”

 Officer Whitley directed Defendant to step out of the vehicle and stand behind

the vehicle on the driver’s side. With Sergeant Visiano and two other officers who

had arrived behind him, Officer Whitley conducted a consensual frisk of Defendant’s

person, which did not reveal a weapon. Officer Whitley then searched the “lungeable

areas” of the vehicle, over the objection of Defendant. Although no weapon was

discovered in the vehicle, Officer Whitley found cocaine in the center console and

placed Defendant under arrest.

 On 14 January 2017, Defendant was charged with felony possession with the

intent to sell or deliver cocaine and misdemeanor possession of drug paraphernalia.

On 25 September 2017, Defendant was indicted on a charge of felony possession of

cocaine.

 Defendant filed a motion to suppress the evidence seized as a result of the

search, arguing that Officer Whitley lacked authority to search his vehicle. A hearing

on the motion was held on 26 June 2018. Officer Whitley was the sole witness and

the only other evidence presented was a video of the stop and search captured by

 -4-
 STATE V. JOHNSON

 Opinion of the Court

Officer Whitley’s audio-visual body camera. The trial court denied Defendant’s

motion, and Defendant then entered guilty pleas to felony possession of cocaine and

misdemeanor possession of drug paraphernalia, reserving the right to appeal the

denial of his motion to suppress. The trial court entered judgment, sentencing

Defendant to 8 to 19 months’ imprisonment, but suspended that sentence and placed

Defendant on supervised probation for 24 months.

 Defendant appeals.1

 II. ANALYSIS

 A. Standard of Review

 “When reviewing a motion to suppress, the trial court’s findings of fact are

conclusive and binding on appeal if supported by competent evidence.” State v.

Fields, 195 N.C. App. 740, 742-43, 673 S.E.2d 765, 767 (2009). Unchallenged findings

of fact are presumed to be supported by competent evidence. State v. Roberson, 163

N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004). The trial court’s conclusions of

law are reviewed de novo. Fields, 195 N.C. App. at 743, 673 S.E.2d at 767.

 Here, the trial court made the following relevant findings of fact:

 1. That on January 14, 2017, Officer E. Whitley was licensed,
 sworn, and on duty, and was acting as a patrol officer
 conducting traffic control near Central Ave. and N. Sharon

 1 Defendant petitions this Court to issue a writ of certiorari in the event that we determine
any defect in his appeal exists. Because Defendant specifically reserved his right to appeal before
entering his guilty plea and gave oral notice of appeal thereafter, his appeal is properly before us,
rendering his petition moot. State v. Crandall, __ N.C. App. __, __, 786 S.E.2d 789, 792 (2016).

 -5-
 STATE V. JOHNSON

 Opinion of the Court

 Amity Rd. in Charlotte, Mecklenburg County, North
 Carolina.

2. That based on his training and experience working in that
 area for 7 years, the above mentioned area is considered by
 Officer Whitley to be a high crime area.

3. That while Officer Whitley observed a black Dodge
 Charger on N. Sharon Amity Rd. his partner ran the
 license plate through Department of Motor Vehicle (DMV)
 on that particular vehicle.

4. That upon searching the vehicle in the DMV database,
 officers learned that the license plate displayed on the
 black Dodge Charger had been issued to an Acura MDX
 vehicle.

5. That when the tag appeared to be fictitious, Officer
 Whitley initiated a traffic stop to investigate further.

6. That when Officer Whitley initiated the traffic stop, the
 driver stopped fairly immediately and pulled into a Burger
 King parking lot.

7. That the Defendant was the driver and sole passenger of
 the black Dodge Charger.

8. That after the Defendant stopped, he raised both of his
 hands in the air upon the officer’s approach.

9. That Officer Whitley observed the Defendant’s hands in
 the air, and based on Officer Whitley’s training and
 experience, he believed that the gesture of raising one’s
 hands in the car can indicate that a person has a gun inside
 the vehicle.

10. That based on his training and experience, Officer Whitley
 was on alert about the possible presence of a gun.

 -6-
 STATE V. JOHNSON

 Opinion of the Court

11. That when Officer Whitley explained that the stop was
 conducted for the fictitious tag, the Defendant immediately
 provided an explanation and told Officer Whitley that he
 had purchased the vehicle earlier that day.

12. That the Defendant presented Officer Whitley with
 documentation, one of which appeared to be a Bill of Sale.

13. That Officer Whitley asked the Defendant whether he had
 a gun and the Defendant indicated that he did not.

14. That Officer Whitley went to his patrol vehicle to check the
 Defendant’s information in NCID, including his criminal
 history, and to run the VIN of the vehicle.

15. That Officer Whitley described that each step mentioned
 in finding 14 is part of Officer Whitley’s routine practice
 during a traffic stop.

16. That when Officer Whitley observed the Defendant’s
 record, there was an indication of a criminal history
 including: Robbery with a Dangerous Weapon, Conspiracy
 to Commit Robbery with a Dangerous Weapon, Assault
 with a Deadly Weapon with the Intent to Kill, and
 Discharging a Weapon into Occupied Property.

17. That Officer Whitley reasonably had concerns for his
 safety.

18. That when Officer Whitley returned to the vehicle, he
 asked the Defendant to step out.

19. That once the Defendant had exited the vehicle, Officer
 Whitley conducted a frisk of the Defendant for weapons
 and did not find any weapons.

20. That Officer Whitley asked for the Defendant’s consent to
 frisk the vehicle for weapons, which the Defendant denied.

 -7-
 STATE V. JOHNSON

 Opinion of the Court

 21. That the Defendant questioned the officer about why he
 would need to frisk the car.

 22. That Officer Whitley conducted a weapons frisk of the
 lungeable areas of the Defendant’s car without consent of
 the Defendant.

 23. That during that weapons frisk, Officer Whitley found a
 substance in a plastic baggie in the center console which
 appeared to be an illegal substance.

 24. That after Officer Whitley completed the weapons frisk,
 the Defendant was placed under arrest.

 B. Sufficiency of the Findings

 Defendant first argues that portions of the trial court’s findings are not

supported by competent evidence. In reviewing the competency of the evidence, we

afford “great deference to the trial court in this respect because it is entrusted with

the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the

facts, and . . . render a legal decision” based on those facts. State v. Cooke, 306 N.C.

132, 134, 291 S.E.2d 618, 619-20 (1982).

 Defendant argues finding of fact 10—that “based on his training and

experience, Officer Whitley was on alert about the possible presence of a gun”—is not

supported by either Officer Whitley’s testimony or the video evidence. Officer Whitley

testified that, in his experience, when people raise their hands in the manner

Defendant did, there is the possibility of a firearm being present. This testimony

supports the trial court’s finding.

 -8-
 STATE V. JOHNSON

 Opinion of the Court

 Defendant also challenges finding of fact 17 that “Officer Whitley reasonably

had concerns for his safety.” This “finding,” however, is a conclusion of law that

requires de novo review, without deference to the trial court. See State v. Campola,

__ N.C. App. __, __, 812 S.E.2d 681, 687 (2018) (“If the trial court labels as a finding

of fact what is in substance a conclusion of law, we review that ‘finding’ de novo.”

(citation omitted)). “As a general rule, . . . any determination requiring the exercise

of judgment or the application of legal principles is more properly classified as a

conclusion of law,” while findings of fact normally involve “logical reasoning through

the evidentiary facts.” In re Helms, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675

(1997) (quotations and citation omitted). This “finding” is akin to the reasonable

suspicion framework establishing when a police officer can reasonably search a

suspect. See Terry v. Ohio, 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909 (1968) (“[T]he issue

is whether a reasonably prudent man in the circumstances would be warranted in

the belief that his safety or that of others was in danger.” (emphasis added)).

 C. Reasonable Suspicion to Search the Vehicle

 In addition to determining that Officer Whitley had a reasonable concern for

his safety when he first spoke with Defendant, the trial court concluded, in relevant

part, as follows:

 1. That the motion of having hands up upon an officer’s
 approach does not automatically incriminate an individual
 by itself, and the Defendant’s action of showing his hands
 was reasonable. However, based on an officer’s experience,

 -9-
 STATE V. JOHNSON

 Opinion of the Court

 it is reasonable for an officer to infer that the motion of
 hands up upon an officer’s approach could indicate the
 presence of a weapon.

 2. That based on the totality of [the] circumstances,
 including but not limited to: the Defendant’s hands in the
 air upon the Officer’s approach, and the Defendant’s prior
 criminal history, that the limited frisk of the lungeable
 areas of the vehicle was justified.

Defendant contends that these conclusions are not supported by the findings of fact.

We disagree.

 Both the federal and North Carolina constitutions protect an individual’s right

to be free from unreasonable government searches and seizures absent probable

cause. State v. Cabbagestalk, __ N.C. App. __, __, 830 S.E.2d 5, 9 (2019) (citing U.S.

Const. amend. IV; N.C. Const. art. I, § 20). Exceptions to the requirement of probable

cause include the Terry stop-and-frisk exception, which allows a police officer to stop

and briefly search a suspect and the area within the suspect’s grasp for weapons if:

“(1) the stop, at its initiation, was premised on a reasonable suspicion that crime may

have been afoot; and (2) the officer possessed a reasonable suspicion that the

individual involved was armed and dangerous.” State v. Malachi, __ N.C. App. __, __,

825 S.E.2d 666, 669 (2019) (citing Terry, 392 U.S. 1, 30-31, 20 L. Ed. 2d at 911)

(emphasis added).

 Reasonable suspicion must “be based on specific and articulable facts, as well

as the rational inferences from those facts, as viewed through the eyes of a

 - 10 -
 STATE V. JOHNSON

 Opinion of the Court

reasonable, cautious officer, guided by his experience and training.” State v. Barnard,

362 N.C. 244, 247, 658 S.E.2d 643, 645 (2008) (quotation marks and citation omitted).

No fact is viewed in isolation, but rather a court “must consider the totality of the

circumstances—the whole picture in determining whether a reasonable suspicion

exists.” State v. Styles, 362 N.C. 412, 414, 665 S.E.2d 438, 440 (2008) (quotation

marks and citations omitted). Reasonable suspicion “is a less demanding standard

than probable cause and requires a showing considerably less than preponderance of

the evidence,” Illinois v. Wardlow, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)

(quotation marks omitted), needing only “some minimal level of objective

justification.” Styles, 362 N.C. at 414, 665 S.E.2d at 439 (quotation marks and

citations omitted).

 Although originally applied to searches of a suspect’s person, the second prong

of the Terry analysis has been extended to encompass brief and limited searches of a

vehicle, “even after the subject is removed from the vehicle.” State v. Minor, 132 N.C.

App. 478, 481, 512 S.E.2d 483, 485 (1999). As explained by the United States

Supreme Court:

 [T]he search of the passenger compartment of an
 automobile, limited to those areas in which a weapon may
 be placed or hidden, is permissible if the police officer
 possesses a reasonable belief based on specific and
 articulable facts which, taken together with the rational
 inferences from those facts, reasonably warrant the officers
 in believing that the suspect is dangerous and the suspect
 may gain immediate control of weapons. . . . If, while

 - 11 -
 STATE V. JOHNSON

 Opinion of the Court

 conducting a legitimate Terry search of the interior of the
 automobile, the officer should, as here, discover contraband
 other than weapons, he clearly cannot be required to ignore
 the contraband, and the Fourth Amendment does not
 require its suppression in such circumstances.

Michigan v. Long, 463 U.S. 1032, 1049-50, 77 L. Ed. 2d 1201, 1220 (1983) (quotation

marks and citations omitted) (emphasis added). In other words, we review the

frisking of a vehicle the same way we would analyze an officer’s frisk of a person.

Minor, 132 N.C. App. at 481, 512 S.E.2d at 485. Because Defendant challenges the

search of his vehicle, but not the traffic stop, we only address whether Officer Whitley

had reasonable suspicion that Defendant was armed and dangerous.2

 The facts that the trial court considered in denying Defendant’s motion to

suppress have all been established as “articulable facts” utilized in supporting an

officer’s reasonable suspicion. Here, the evidence shows that it was late at night,

State v. Watkins, 337 N.C. 437, 442-43, 446 S.E.2d 67, 70-71 (1994); the stop occurred

in a high-crime area, Wardlow, 528 U.S. at 124, 145 L. Ed. 2d at 576; Defendant

exhibited a hand gesture, State v. King, 206 N.C. App. 585, 590, 696 S.E.2d 913, 916

 2 Defendant does not challenge the evidence supporting the trial court’s finding of fact that
Officer Whitley searched the “lungeable areas” of Defendant’s vehicle. See State v. Edwards, 164 N.C.
App. 130, 137, 595 S.E.2d 213, 218 (2004) (handcuffing the defendant and placing him on the curb did
not prevent “the possibility of him gaining immediate control of the handgun” found in the vehicle);
State v. Braxton, 90 N.C. App. 204, 209, 368 S.E.2d 56, 59 (1988) (“[T]hose areas of a passenger
compartment of a motor vehicle where weapons might be hidden may be searched if the facts, coupled
with rational inferences drawn therefrom, reasonably warrant an officer’s belief that a suspect is
dangerous and may gain control of weapons.”). Defendant simply challenges Officer Whitley’s
reasonable suspicion to search any part of Defendant’s vehicle based on a suspicion that he was armed
and dangerous.

 - 12 -
 STATE V. JOHNSON

 Opinion of the Court

(2010); Defendant appeared highly nervous, State v. Willis, 125 N.C. App. 537, 542,

481 S.E.2d 407, 411 (1997); Defendant “bladed” his body to shield something from

being seen, Malachi, __ N.C. App. at __, 825 S.E.2d at 671; and Defendant had a

violent criminal history involving weapons. State v. Malunda, 230 N.C. App. 355,

360, 749 S.E.2d 280, 284 (2013).

 Though the trial court’s findings do not note what time the stop occurred, that

Defendant appeared nervous, or that Defendant bladed his body when reaching into

the console, because that evidence was uncontradicted, we may imply those findings

from the ruling of the court and include them in our reasonable suspicion calculus.

Campola, __ N.C. App. at __, 812 S.E.2d at 690; see also State v. Bartlett, 368 N.C.

309, 312, 776 S.E.2d 672, 674 (2015) (“When there is no conflict in the evidence, the

trial court’s findings can be inferred from its decision.”).

 Defendant likens this case to State v. Minor, 132 N.C. App. 478, 481, 512 S.E.2d

483, 485 (1999), in which we analyzed the defendant’s hand movements and the

officers’ decision to leave the defendant in the vehicle for an extended period of time

prior to the search. In Minor, at about 4:00 in the afternoon, a police officer pulled

over the vehicle in which the defendant was a passenger because its temporary tag

was illegible. Id. at 480, 512 S.E.2d at 484. When the officer activated his blue

emergency lights, he saw the defendant “move his hand toward the center console of

the car.” Id. Once the car stopped, the officer frisked the driver and started talking

 - 13 -
 STATE V. JOHNSON

 Opinion of the Court

to him. While that was going on, another officer on the scene saw the defendant “put

his hand on the door handle as if to emerge from the car, but [then] dropped his hand

and remained in the car when he saw” the officer looking at him. Id. It was not until

the other officer finished speaking with the driver that the defendant was removed

from the vehicle and frisked for weapons. Although a frisk of the defendant’s person

revealed nothing, the officers found a handgun in the interior of the vehicle and found

crack cocaine upon a further search of the defendant’s pocket incident to his arrest.

Id. We held in Minor that the officers’ decision to leave the defendant in the vehicle

until the officer conversing with the driver was finished, despite the defendant’s hand

movements, cut against the finding that “the officers supposedly feared” that the

defendant was armed and dangerous. Id. at 483, 512 S.E.2d at 486.

 Minor is readily distinguishable from this case. Officer Whitley witnessed a

vehicle with a mismatched tag driving around midnight in an area where the officer

had investigated “[n]umerous drug cases as well as firearm cases.” Defendant then

raised his hands out of the window, a gesture Officer Whitley has found in his

experience increases the probability that a firearm is present. Defendant was also

“very nervous” and contorted his body in such a way that made it seem like he was

trying to hide something from Officer Whitley’s vantage point. Though Officer

Whitley was suspicious at this point, it was not until he learned of Defendant’s violent

 - 14 -
 STATE V. JOHNSON

 Opinion of the Court

weapons-related criminal history that he then decided to frisk Defendant and the

lungeable areas of the vehicle.

 Citing a decision by the Fourth Circuit Court of Appeals, Defendant asserts

that raising one’s hands out of the window is a “show of respect and an attempt to

avoid confrontation” similar to that of “a young man[] keeping his eyes down during

a police encounter.” United States v. Massenburg, 654 F.3d 480, 489 (4th Cir. 2011).

Massenburg is neither binding nor persuasive.3 The officers in Massenburg thought,

and the trial court agreed, that the suspect was acting nervously when he refused to

make eye contact with them during their request to search him. Id. The Fourth

Circuit disagreed, writing that a lack of eye contact brings little weight to a

determination as to nervousness because “the Government often argues just the

reverse: that it was suspicious when an individual looks or stares back at [officers].”

Id. (quotation marks and citation omitted) (alteration in original).

 Here, Defendant is not potentially vulnerable to such a catch-22 as the

defendant in Massenburg and this Court has established that raising one’s hands in

a similar fashion is a factor to be considered in determining whether reasonable

suspicion justified a search. See King, 206 N.C. App. at 590, 696 S.E.2d at 916

(holding reasonable suspicion existed to search the defendant when considering, inter

 3 While decisions from other jurisdictions are not binding, “we may consider such decisions as
persuasive authority” if found to be instructive. State v. Fernandez, __ N.C. App. __, __, 808 S.E.2d
362, 367 n.1 (2017) (citing Carolina Power & Light Co. v. Emp’t Sec. Comm’n of N.C., 363 N.C. 562,
569, 681 S.E.2d 776, 780 (2009)).

 - 15 -
 STATE V. JOHNSON

 Opinion of the Court

alia, “the unusual gesture of [the d]efendant placing his hands out of his window.”).

While it could be construed that a suspect who has his hands up means to convey his

concession to police authority, decisions following Terry have long held that

reasonable suspicion is circumstance-dependent and that each factor, no matter how

individually innocent or inconsequential, must be viewed in conjunction with all other

factors. State v. Mangum, __ N.C. App. __, __, 795 S.E.2d 106, 119 (2016). And as to

the notion of Defendant possibly having a gun by the raising of his hands, courts are

encouraged to “credit the practical experience of officers,” like Officer Whitley, “who

observe on a daily basis what transpires on the street.” State v. Johnson, 246 N.C.

App. 677, 692, 783 S.E.2d 753, 764 (2016) (quotations, citations, and alterations

omitted). It is not within our purview to “indulge in unrealistic second-guessing” of

what reasonable officers should have done in light of their past histories in similar

scenarios. United States v. Sharpe, 470 U.S. 675, 686, 84 L. Ed. 2d 605, 616 (1985).

 In viewing the express and implied facts through the totality of the

circumstances, we affirm the trial court’s conclusion that, at the time of the search,

reasonable suspicion existed that Defendant was armed and dangerous. We

acknowledge that Defendant responded to each of Officer Whitley’s requests and

commands and cooperated with him. However, “even in the face of an otherwise

cooperative defendant who present[s] no obvious signs of carrying a weapon,” State v.

McRae, 154 N.C. App. 624, 630, 573 S.E.2d 214, 219 (2002), Officer Whitley was

 - 16 -
 STATE V. JOHNSON

 Opinion of the Court

entitled to rely on his experience and training and “formulate ‘common sense

conclusions’ about ‘the modes or patterns of operation of certain kinds of lawbreakers’

in reasoning that” Defendant may have been armed. Johnson, 246 N.C. App. at 692,

783 S.E.2d at 764 (quoting State v. Butler, 331 N.C. 227, 234, 415 S.E.2d 719, 723

(1992)).

 C. Extension of the Stop

 Defendant also argues that Officer Whitley unlawfully extended the duration

of the traffic stop. Because we have already determined that Officer Whitley had

reasonable suspicion to conduct the search for weapons following the discovery of

Defendant’s criminal history, Defendant’s argument is overruled.4 See State v. Myles,

188 N.C. App. 42, 45, 654 S.E.2d 752, 754 (2008) (“Once the original purpose of the

stop has been addressed, there must be grounds which provide a reasonable and

articulable suspicion in order to justify further delay.” (quotations and citation

omitted)).

 III. CONCLUSION

 For the foregoing reasons, we hold that Defendant has failed to demonstrate

that the trial court erred in denying his motion to suppress.

 4 Defendant concedes that Officer Whitley’s criminal history check was a lawful precautionary
safety measure. See State v. Bullock, 370 N.C. 256, 258, 805 S.E.2d 671, 674 (2017) (“ ‘[T]he almost
simultaneous computer check of a person’s criminal record, along with his or her license and
registration, is reasonable and hardly intrusive.’ ” (quoting United States v. McRae, 81 F.3d 1528, 1536
n.6 (10th Cir. 1996)).

 - 17 -
 STATE V. JOHNSON

 Opinion of the Court

NO ERROR.

Judge BERGER concurs.

Judge MURPHY dissents in a separate opinion.

 - 18 -
 STATE V. JOHNSON

 Opinion of the Court

No. COA19-96 – State v. Johnson

 MURPHY, Judge, dissenting.

 The officer did not have reasonable suspicion Defendant was armed and

dangerous to support his search of Defendant’s vehicle and I must respectfully dissent

from the Majority’s opinion to the contrary.

 The Majority correctly sets out our binding rule regarding Terry searches of a

vehicle’s interior being appropriate where the officer has reasonable suspicion the

suspect is armed and dangerous:

 [T]he search of the passenger compartment of an
 automobile, limited to those areas in which a weapon may
 be placed or hidden, is permissible if the police officer
 possesses a reasonable belief based on “specific and
 articulable facts which, taken together with the rational
 inferences from those facts, reasonably warrant” the
 officers in believing that the suspect is dangerous and the
 suspect may gain immediate control of weapons.

Michigan v. Long, 463 U.S. 1032, 1049, 77 L. Ed. 2d 1201 (1983). However, I disagree

with the Majority’s analysis of the “articulable facts” of Defendant’s case and cannot

conclude that, under the circumstances, the police officer here possessed a reasonable

belief that Defendant was dangerous.

 The Majority concludes, in relevant part, “[t]he facts that the trial court

considered in denying Defendant’s motion to suppress have all been established as

 - 19 -
 STATE V. JOHNSON

 Opinion of the Court

‘articulable facts’ utilized in supporting an officer’s reasonable suspicion.” In support

of this statement, the Majority cites the following facts: (1) “it was late at night” when

Defendant was pulled over; (2) “the stop occurred in a high-crime area”; (3)

“Defendant exhibited a hand gesture”; (4) “Defendant appeared highly nervous”; (5)

“Defendant ‘bladed’ his body to shield something from being seen”; and (6) “Defendant

had a violent criminal history involving weapons.” These facts were largely not found

by the trial court and are not reflected in the record.

 The Majority correctly notes that, “[w]hen there is no conflict in the evidence,

the trial court’s findings can be inferred from its decision.” State v. Bartlett, 368 N.C.

309, 312, 776 S.E.2d 672, 674 (2015). In Bartlett, our Supreme Court reaffirmed the

principle that, when the evidence is undisputed, certain findings can be inferred from

the trial court’s decision without the entry of formal findings of fact. Id. For example,

implicit in a trial court’s conclusion that a Defendant’s statement to SBI agents must

be suppressed because he did not initiate the dialogue with the officers is the finding

that the Defendant did not initiate such a dialogue. State v. Munsey, 342 N.C. 882,

885, 467 S.E.2d 425, 427 (1996). This rule does not, however, give our appellate

courts carte blanche to imply findings of fact in every instance, and I believe the

Majority’s reliance on the rule in this case is a misapplication of our jurisprudence.

See Moses v. Bartholomew, 238 N.C. 714, 718, 78 S.E.2d 923, 926 (1953) (internal

citation omitted) (“[The trier of facts] is the sole judge of the credibility and weight of

 - 20 -
 STATE V. JOHNSON

 Opinion of the Court

the evidence. As a consequence, it may accept or reject the testimony of a witness,

either in whole or in part, depending solely upon whether it believes or disbelieves

the same.”).

 As the Majority notes, the trial court did not enter findings of fact that

Defendant appeared nervous—let alone “highly” nervous—or that he bladed his

body—let alone that he did so “to shield something from being seen”—during the stop

at issue. Based on the record, I cannot agree with the Majority that these findings

may be inferred from the trial court’s ruling. Unlike the trial courts in Bartlett and

Munsey, the trial court here entered detailed findings of fact to support its conclusion

that the officer had reasonable suspicion to believe Defendant was armed and

dangerous. In entering those findings, the trial court did not enter findings regarding

Defendant’s purported nervousness or “blading” of his body, and I do not infer such

findings from the trial court’s ruling in this case. Inferring additional findings, ones

that go beyond what the trial court actually found, to rescue an otherwise insufficient

ruling of the trial court is a perversion of the rule our Supreme Court described in

Bartlett.

 Additionally, I disagree with the Majority’s reliance on State v. King, 206 N.C.

App. 585, 590, 696 S.E.2d 913, 916 (2010), which is a case with facts that are

distinguishable from those here. In King, the defendant held “both of his hands out

of the window as [the officer] approached the vehicle, and without any question or

 - 21 -
 STATE V. JOHNSON

 Opinion of the Court

inquiry, [the d]efendant immediately told [the officer] that he had a gun sitting on

the dashboard.” King, 206 N.C. App at 587, 696 S.E.2d at 914. In weighing the

factual circumstances supporting the officer’s reasonable suspicion that the

defendant was dangerous, we stated:

 The combination of this loaded handgun, the late hour, the
 odd manner by which Defendant and his passenger
 continued to look at Cecil as they passed the officer, and
 the unusual gesture of Defendant placing his hands out of
 his window, gave rise to far more than a hunch that
 Defendant might have been armed.

Id. at 590, 696 S.E.2d at 916. The Majority cites King as support for its contention

that “Defendant made a hand gesture” that supported the officer’s reasonable

suspicion that he was armed and dangerous. I do not disagree that Defendant’s “hand

gesture” may enter our calculus, but I note the facts of King are distinguishable from

those here, where Defendant raised his hands when the officer approached and then

acted politely and cooperatively for the remainder of the stop.

 Here, where the Majority lists six “articulable facts” supporting the officer’s

reasonable suspicion Defendant was armed and dangerous, I see far fewer facts to

support such a conclusion. Defendant was pulled over late at night5 in what the

officer described as a “high crime area,” that he raised his hands in a manner the

officer believed was “sometimes” or “potentially” indicative of possession of a firearm,

 5 This is another fact that the trial court did not specifically find. However, the time of a traffic
stop is a verifiable and purely objective fact that I am much more comfortable relying upon without a
formal finding from the trial court.

 - 22 -
 STATE V. JOHNSON

 Opinion of the Court

and that he had a criminal record that included violent offenses involving weapons.

Those facts do not provide a sufficient basis from which the officer may have

reasonably suspected Defendant to be armed and dangerous.

 I believe the Majority would agree that a holding that any traffic stop that

occurs late at night in a “high crime area” is grounds for a Terry frisk of the stopped

vehicle—even just the areas within the driver’s immediate reach—grants officers

overbroad authority to search. When I add to that scenario the combined weight of

Defendant’s action of raising his hands upon being pulled over and his criminal

record, the facts of this case are still not enough for me to conclude the officer could

articulate, based on demonstrable facts, reasonable suspicion Defendant was armed

and dangerous at the time the officer decided to conduct his search. Specifically, in

regard to his criminal record, Defendant had paid his debt to society for his previous

transgressions and convictions are not meant to be a lifetime scarlet letter or

permanent justification for police to treat that individual with a different class of

liberty under our State or Federal Constitutions. I respectfully dissent.

 - 23 -